IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHN DOE, *a minor, by and through his Mother and next friend,* SHARIEKA FRAZIER, <br><br> Plaintiff, <br><br> v. <br><br> BONNIE HOMMRICH, *in her official capacity as the Commissioner of the Tennessee Department of Children's Services,* **THE TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, RUTHERFORD COUNTY, TENNESSEE, LYNN DUKE,** *in her individual and official capacity as Director of the Rutherford County Detention Facility* and **LIEUTENANT ANGELA ISTVANDITSCH,** *in her individual and official capacity as an officer of the Rutherford County Juvenile Detention Facility,* <br><br> Defendants. | No._____ |

## MEMORANDUM IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION

Plaintiff, through undersigned counsel, submits this memorandum in support of Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction.

### INTRODUCTION

Plaintiff is suing Defendants to stop ongoing and unlawful violation of his right to be free from cruel and unusual punishment and inhumane treatment as a pretrial detainee in a county juvenile facility. Plaintiff has been held in solitary confinement for five (5) days for allegedly

disrupting the juvenile facility's classroom. Plaintiff has been locked inside a concrete cell and kept from contact with other human beings for 23 out of 24 hours. Plaintiff has not been allowed to participate in educational activities, or to meaningfully exercise his body. Plaintiff has received no mental health treatment. Defendants acknowledge that Plaintiff likely suffers from mental illness, and that he is not a threat to himself or others at the facility.

Plaintiff asks this Court for a temporary restraining order and/or a preliminary injunction because Defendants' actions and threats constitute an ongoing violation of John Doe's Eighth Amendment rights that has caused, and continues to cause, irreparable harm. The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects John Doe's right to be free from cruel and unusual punishments, or otherwise inhumane treatment, while confined as a pretrial detainee.

## STATEMENT OF FACTS

The Juvenile Court for Rutherford County, Tennessee ("the Juvenile Court") ordered John Doe detained while awaiting adjudication in the Facility on March 18, 2016. The Court set no review of the matter until the child's plea date on May 5, 2016. (Ver. Comp. ¶ 22). The Juvenile Court further ordered that DCS provide the child with a mental evaluation by April 18, 2016, because "there is reason to believe the child has a mental illness and/or mental retardation". (Ver. Comp. ¶ 23). A mental health provider attempted to conduct the evaluation on April 6, 2016, but was turned away from the facility because the Facility refused to allow face-to-face contact between the evaluator and the child at the pre-arranged time scheduled for the meeting. Accordingly, the evaluation has not been conducted. The Provider informed the Juvenile Court that it had not conducted the evaluation by letter dated April 6, 2016. (Ver. Comp. ¶ 24).

Instead of assessing his mental health as ordered, on April 19, 2016, County employees at the Facility, including Duke and Istvanditsch, participated in the prosecution of a motion that sought to place John Doe in seclusion/isolation for 23 hours a day with no books or other materials, and with the window to his cell covered with a board. (Ver. Comp. ¶ 25). Lieutenant Istvanditsch expressly acknowledged that she sought permission to use measures in excess of the regulations governing the Facility. (Ver. Comp. ¶ 25). The Department of Children's Services, though its agents were present at the hearing, made no objections to placing the child in solitary confinement. (Ver. Comp. ¶ 26).

Defendants urged placement of John Doe into indeterminate solitary confinement because was disobedient and he had allegedly disrupted the Facility's classroom, "hollered," "rapped," and had "flashed gang symbols." Defendants did not allege that John Doe was a physical danger to himself or others, that an emergency existed or that he had made threats to other inmates or officers at the Facility. Defendants sought solitary confinement for the purposes of punishment and/or discipline. (Ver. Comp. ¶ 27). At the solitary confinement hearing, Lieutenant Istvanditsch acknowledged that placement of a juvenile in solitary confinement likely violated DCS and other state policy and regulations. Lieutenant Istvanditsch even acknowledged that John Doe likely suffered from some sort of mental illness. (Ver. Comp. ¶ 28).

Upon Court approval, Defendants proceeded to place John Doe in solitary confinement on April 19, 2016, and he has remained there ever since. (Ver. Comp. ¶ 29). John Doe's solitary confinement initially included isolation in a concrete cell for 23 out of 24 hours a day, with no access to books, magazines, music or other educational or recreational materials. (Ver. Comp. ¶ 30).

On April 21, 2016, John Doe returned to Court for a review of his solitary confinement. Defendants acknowledged John Doe's good behavior, and modified his confinement to include access to books and some extra time outside his cell. Otherwise, he continued to be kept in confinement for most of his days, and for at least an additional 72 hours. (Ver. Comp. ¶ 31).

Throughout his solitary confinement, John Doe has been excluded from the Facility's educational program, and no alternative has been provided. John Doe has further been excluded from all recreational activities and has not been allowed meaningful opportunities to exercise his body. (Ver. Comp. ¶ 32). John Doe has not been allowed access to a counselor or other mental health professional throughout his detention, and certainly not before or during his period of solitary confinement. (Ver. Comp. ¶ 33).

John Doe is currently suffering adverse consequences form his continued solitary confinement, including further withdrawal, depression, listlessness and lethargy. He is currently deprived of protected educational opportunities. He is not allowed meaningful opportunities to exercise his body. The total extent of harm visited upon him is unknown. (Ver. Comp. ¶ 34).

## ARGUMENT

As discussed below, an analysis of the four-factor test governing the issuance of temporary restraining orders and preliminary injunctions demonstrates that John Doe is entitled to a temporary restraining order and preliminary injunctive relief during the pendency of these proceedings.

### I. THE PRELIMINARY INJUNCTION STANDARD AND PURPOSE.

Generally, courts consider four factors when deciding whether to issue a temporary restraining order or preliminary injunction. The four factors are:

(1) whether the movant has a strong likelihood of success on the merits;

4

(2) whether the movant would suffer irreparable harm without the injunction;

(3) whether issuance of the injunction would cause substantial harm to others;

(4) whether the public interest would be served by the issuance of the injunction.

*Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *see also Barber v. Dearborn Pub. Sch.*, 286 F. Supp. 2d 847, 851 (E.D. Mich. 2003). Courts balance these four factors in their analysis, as no single factor is dispositive. *Barber*, 286 F. Supp. 2d at 851 *(citing Neveux v. Webcraft Tech., Inc.*, 921 F. Supp. 1568, 1570-71 (E.D. Mich. 1996) (citing Performance Unlimited v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)).

## II. JOHN DOE HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

John Doe has a very strong likelihood of succeeding on his Eighth and Fourteenth Amendment claims. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.' " *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir.2011) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). Pretrial detainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), are analyzed under the same rubric as Eighth Amendment claims brought by prisoners. *See Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985) (citing *Bell v. Wolfish,* 441 U.S. 520, 545 (1979)). Fundamentally, the " 'concept underlying the Eighth Amendment ... is nothing less than the dignity of [hu]man[kind].' " *Hope v. Pelzer,* 536 U.S. 730, 738 (2002) (quoting *Trop v. Dulles,* 356 U.S. 86, 100, (1958)).

Proving an Eighth Amendment claim requires that the plaintiff make a showing of deliberate indifference. *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir.2008) (citing *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)); *see also Estelle v. Gamble,* 429 U.S. 97, (1976). Deliberate

5

indifference has two components to it: objective and subjective. *Harrison*, 539 F.3d at 518. The objective component first demands a showing that the detainee faced a substantial risk of serious harm. *Id.* But the objective component is not met by proof of such a substantial risk of serious harm alone. The objective component further "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency"—that is, it "is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Therefore, the objective component of deliberate indifference is met upon a showing that a detainee faced a substantial risk of serious harm and that such a risk is one that society chooses not to tolerate.

As to the subjective component, a plaintiff must show that the defendant had "a sufficiently culpable state of mind." *Harrison*, 539 F.3d at 518 (internal quotation marks omitted). This state of mind is shown "where 'the official knows of and disregards' " the substantial risk of serious harm facing the detainee. *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Furthermore, the Eighth Amendment " 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society,' ... an assessment of contemporary values concerning the infliction of a challenged sanction is relevant." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)

In the instant case, John Doe has a right to be free from cruel and unusual punishment or inhumane treatment under the Eighth and Fourteenth Amendments. Evolving notions of decency and the overwhelming weight of scientific opinion and authority hold that solitary confinement of juveniles constitutes such inhumane treatment. Authority also prohibits the imposition of solitary

6

confinement on individuals suffering from mental illness. The regulations promulgated by the Department of Children's Services explicitly prohibit solitary confinement from being used as a form of punishment. Defendants request for permission from the Juvenile Court to utilize solitary confinement in a manner not permitted by those guidelines demonstrates knowledge that placing John Doe in solitary confinement for an extended period is likely to result in serious harm, especially considering the Order for John Doe's mental evaluation that was not conducted prior to the solitary confinement hearing. Furthermore, Defendants have proffered no legitimate, rehabilitative reason for lengthy placement of this child in a cell with no contact with peers, educational materials or mental health professionals.

## A. SOLITARY CONFINEMENT OF JUVENILES OR MENTALY ILL PEOPLE IN GENERAL, AND OF JOHN DOE IN PARTICULAR, IS INHUMANE

While isolated in solitary confinement, children are deprived of the services and programming they need for healthy growth and development. Solitary confinement can cause serious psychological, physical, and developmental harm – or, worse, can lead to persistent mental health problems and suicide. These risks are magnified for young people with disabilities or histories of trauma and abuse. Normal human contact and a range of age-appropriate services and programming are essential for the development and rehabilitation of young offenders.

There can be no doubt that the solitary confinement of juveniles is objectively harmful, as authorities from state, federal, international and scientific communities agree that such confinement is extremely damaging to youth. An overwhelming number of youth in juvenile detention are victims of psychological, physical or sexual abuse. An overwhelming number of youth in juvenile detention suffer from diagnosed and undiagnosed mental illness. The mind and psyche of juveniles remains in a developmental stage, and is particularly vulnerable to the adverse effects of solitary confinement.

John Doe in particular faces these adverse consequences from solitary confinement. The Court and Defendants have already acknowledged that he likely suffers from a mental illness. They have yet to provide the assessment required to determine appropriate treatment for that illness, but all pf the authorities agree that solitary confinement exacerbates mental illness. This fact holds particularly true for children.

Defendants cannot plausibly argue that John Doe's solitary confinement is humane. DCS has already declared solitary confinement harmful, and has largely prohibited its use except for short-term, emergency, medically approved situations. In DCS's Administrative Policies and Procedures, at 27.2, DCS, referring to solitary confinement as "seclusion", declares that "[t]he uses of seclusion is seen as a restrictive intervention and one that poses a risk to the psychological well-being of a child/youth." For children in YDCs, which house hardened, repeat felons, DCS policy 19.12 absolutely prohibits the use of seclusion "as a punishment or consequence". It is clear that the State of Tennessee, acting through DCS, has acknowledged the objective harm of seclusion, and is subjectively aware of the harm.

In a demonstration of the evolving understanding of the harshness of this practice, President Obama recently issued an Executive Order prohibiting the solitary confinement in the federal system, acknowledging the severe harmful effects on children. The US Attorney General's *National Task Force on Children Exposed to Violence* said, "nowhere is the damaging impact of incarceration on vulnerable children more obvious than when it involves solitary confinement."

Additionally, nearly every court to consider the solitary confinement of individuals with serious mental disabilities has found the practice to be unconstitutional. For example, *Ruiz v. Johnson*, Southern Federal District Court of Texas, 1999 (37 F. Supp. 2d. 855, 915 (S.D. Tex. 1999)), rev'd on other grounds, *Ruiz v. Johnson*, Fifth Circuit Federal Court of Appeals, 2001 (243

8

F.3d 941 (5th Cir. 2001)), adhered to on remand, *Ruiz v. Johnson*, Southern Federal District Court of Texas, 2001 (154 F. Supp. 2d 975 (S.D. Tex. 2001)) ("Conditions in TDCJ-ID's administrative segregation units clearly violate constitutional standards when imposed on the subgroup of the plaintiff's class made up of mentally-ill prisoners); *Coleman v. Wilson*, Eastern Federal District Court of California, 1995 (912 F.Supp. 1282, 1320-21 (E.D. Cal. 1995)); *Madrid v. Gomez*, Northern Federal District Court of California, 1995 (889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995)); *Casey v. Lewis*, Federal District Court of Arizona, 1993 (834 F. Supp. 1477, 1549-50 (D. Ariz. 1993)); *Langley v. Coughlin*, Southern Federal District Court of New York, 1988 (715 F. Supp. 522, 540 (S.D.N.Y. 1988)) (holding that evidence of prison officials' failure to screen out from SHU 'those individuals who, by virtue of their mental condition, are likely to be severely and adversely affected by placement there' states an Eighth amendment claim).

The US Department of Justice, when it has investigated the isolation and segregation of adolescents in adult facilities, has suggested that there are constitutional limits related to the physical and social isolation of youth with regard to conditions, duration, and process. In 2003, the United States Congress enacted the Prison Rape Elimination Act, and Tennessee has agreed to be bound by its terms. Although in a different context, the law makes clear that solitary confinement of youth is inappropriate. The law bans isolation except as a last resort to keep the juvenile or others safe, and then only until an alternative can be arranged. It bans the practice for both rape victims, and perpetrators of rape.

International Authorities uniformly express outrage against the use of solitary confinement for juveniles. With regard to solitary confinement, the United Nations Guidelines for the Prevention of Juvenile Delinquency (Riyadh Guidelines) describe punitive solitary confinement of young people under age 18 as cruel, inhuman, or degrading treatment. The Committee on the

Rights of the Child, which interprets the CRC, has also suggested that the punitive solitary confinement of young people under age 18 is cruel, inhuman, or degrading treatment. The United Nations Rules for the Protection of Juveniles Deprived of their Liberty reiterates this conclusion.

A number of treaty and regional bodies have suggested that the prolonged solitary confinement of both adults and children can constitute cruel, inhuman, or degrading treatment. The special rapporteur on torture, in his report to the General Assembly, called for an absolute ban on solitary confinement for young people under age 18: "The Special Rapporteur holds the view that the imposition of solitary confinement, of any duration, on juveniles is cruel, inhuman or degrading treatment and violates article 7 of the International Covenant on Civil and Political Rights and article 16 of the Convention against Torture." The special rapporteur also called for an absolute ban on solitary confinement of those with mental disabilities because the adverse effects are especially significant for persons with serious mental health problems.

Although most research on solitary confinement has focused on adults, the findings of this research reasonably can be applied to youth. Research shows that adults who are subject to solitary confinement generally exhibit a variety of negative physiological and psychological reactions, including: hypersensitivity to external stimuli; perceptual distortions and hallucinations; increased anxiety and nervousness; revenge fantasies, rage, and irrational anger; fears of persecution; lack of impulse control; severe and chronic depression; appetite loss and weight loss; heart palpitations; withdrawal; blunting of affect and apathy; talking to oneself; headaches; problems sleeping; confusing thought processes; nightmares; dizziness; self-mutilation; and lower levels of brain function, including a decline in EEG activity after only a few days in solitary confinement.

Young people are even less psychologically able than adults to handle solitary confinement. Youth are also psychologically different than adults. They experience time

10

differently (a day for a child feels longer than a day to an adult) and have a greater need for social stimulation. Experts, such as the American Academy of Child and Adolescent Psychiatry, believe that, due to their "developmental vulnerability," adolescents are particularly at risk of adverse reactions.

Research published by the Department of Justice found that more than 50% of the suicides of children detained in juvenile facilities occurred while youth were confined alone in their room (a form of solitary confinement) – and that more than 60% of young people who committed suicide had a history of being held in isolation.

Of course, the literature also recognizes that children held in isolation are far less likely to receive appropriate education or access to physical development, and this has been true for John Doe.

### B. JOHN DOE HAS SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF

The second prong of the temporary restraining order and preliminary injunction test – whether the movant would suffer irreparable harm without injunctive relief – also supports entry of a temporary injunction. The loss of constitutional rights, even for a short amount of time, is presumed to constitute irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Moreover, the literature cited above supports the idea that John Doe will suffer increasing harm for each hour he spends in solitary confinement, and that the harm may not be undone.

### C. A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WILL NOT CAUSE SUBSTANTIAL HARM TO OTHERS

The third prong of the test – whether a preliminary injunction would cause substantial harm to others – clearly weighs in favor of issuing an injunction. Defendants have not and cannot identify any way in which their interests (or the interests of anyone else) would be harmed if John

11

Case 3:16-cv-00799   Document 3   Filed 04/25/16   Page 11 of 12 PageID #: 43

Doe is released from solitary confinement. They have admitted that he is not a threat to himself or others. In essence, they are "teaching him a lesson". They will not be harmed if they are required to teach that lesson in a less detrimental way.

### D. A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WILL SERVE THE PUBLIC INTEREST.

The final prong of the test – the public interest – also strongly supports granting preliminary injunctive relief. The protection of constitutionally protected rights always serves the public interest. Indeed, "protection of constitutional rights … *is always in the public interest.*" *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979) (emphasis added), and *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)); *see also Barber*, 286 F. Supp. 2d at 859-60 and *Chambers*, 145 F. Supp. 2d at 1073.

### CONCLUSION

For the foregoing reasons, Plaintiff Brespectfully asks this Court to enter a temporary restraining order, and to convert the order into a preliminarily injunction, enjoining Defendants from placing John Doe, and others juveniles housed as pretrial detainees or who are mentally ill, in solitary confinement.

Respectfully Submitted,

/s/ Wesley B. Clark
Wesley B. Clark, #032611
DOWNTON CLARK, PLLC
2706 Larmon Drive
Nashville, Tennessee 37204
(615) 984-4681
wesley@downtonclark.com

/s/ Mark J. Downton
Mark J. Downton, #020053
DOWNTON CLARK, PLLC
2706 Larmon Drive
Nashville, Tennessee 37204
(615) 984-4681
mark@downtonclark.com

ATTORNEYS FOR PLAINTIFF